**In the Matter of FRIEDMAN'S, INC., et al., Debtors.**

No. 05–40129.

United States Bankruptcy Court, S.D. Georgia, Savannah Division.

April 4, 2005.

See also 336 B.R. 880, 2005 WL 3691105, 336 B.R. 891, 2005 WL 3691152, and 336 B.R. 896, 2005 WL 3690569.

Kathleen Horne, Savannah, GA, for Debtor.

### *MEMORANDUM AND OPINION ON MOTION TO EXTEND EXCLUSIVI-TY PERIOD TO FILE A PLAN*

LAMAR W. DAVIS, JR., Bankruptcy Judge.

Debtors' cases were filed on January 14, 2005. On March 11, 2005, the Debtors filed a Motion for an Order extending the Debtors' Exclusive Periods Within Which to File a Plan and to Solicit Acceptances of a Plan of Reorganization ("Exclusivity Motion") from May 14, 2005, and July 13, 2005, to February 28, 2006, and May 30, 2006. Debtors seek a lengthy extension because of the nature of their large, troubled retail jewelry business. Debtors argue that extending the exclusivity periods until the early part of 2006 is essential to ensuring stability and having the time necessary to deal with the myriad problems it faces and propose a confirmable plan.

A limited objection to the relief sought by the Debtors was filed by the Official Committee of Unsecured Creditors on March 24, 2005 (Doc. # 392). While generally supporting the relief requested, the Committee sought one modification to the terms of the Order to which the Debtors have subsequently agreed. In addition, objections were filed by certain shareholders of Friedman's, Inc., and by the Office of the United States Trustee. The United States Trustee does not oppose the relief sought but has asserted that it has under consideration a request for the appointment of an equity security holders' committee pursuant to 11 U.S.C. § 1102. The United States Trustee has not determined whether to exercise its discretion in appointing an equity security holders' committee, but has requested that the Court determine prospectively that, if such a committee is appointed, it should have the right to bring back before the Court a request for a shortening or limitation on any extension of exclusivity granted as a result of this Order. Debtors oppose that relief, and for the reasons set forth in this Order that objection is overruled.

The second unresolved objection is the limited objection of certain shareholders (Regis Special Situations Fund, LLP, and the Yacktman Funds, Inc., hereinafter referred to as "R & Y"). R & Y do not oppose the granting of an extension, but argue that the requested extension is extraordinarily long and excessive, and that the reasons advanced for granting such an extension do not constitute good cause for the relief sought. They suggest instead that the exclusivity periods be extended to July 15, 2005, and September 15, 2005, respectively. For the reasons set forth in this opinion that objection is likewise overruled.

### FINDINGS OF FACT

As it relates to the two remaining objections, a lengthy evidentiary hearing was held on March 31, 2005. Testimony was received from Sam Cusano, the President and CEO, Ronald Tucker, a member of the Creditors' Committee and its co-chair, and William Q. Derrough, Managing Director of Jeffries & Company, Inc., the financial advisor and investment banker appointed to serve the Debtors. All of the witnesses testified in support of the Debtors' Motion and were subject to cross-examination, but no fact or expert evidence was introduced by any of the objecting parties.

Cusano was hired to run the company in June 2004 after it had suffered financial set backs and was being investigated by various government agencies. When he arrived the company was essentially out of cash, had lost key members of its management team, and the vendors, whose cooperation in producing and selling merchandise is critical to the company's success, were not supporting the company.

Because management believed that the company could achieve a restructuring outside of bankruptcy, it had not developed a pre-petition Chapter 11 plan. However, after Debtors suffered a performance shortfall during the 2004 Christmas retail season, certain of the Debtors' lenders refused to fund future business operations in accordance with their loan agreements. Because of this refusal, Debtors were forced to file Chapter 11. Since filing, the Debtors sought and received Court approval to conduct store closings sales in 164 of its underperforming locations. The Debtors also proposed and were granted authority to extend the deadline to assume or reject its closing store leases until August 31, 2005, and the Go–Forward store leases until February 28, 2006. Debtor provided assurances to lessors that it will not close stores during the fourth quarter of 2005 unless it files a motion to reject

those leases prior to September 1, so as to ensure that the stores do not "go dark" during the 2005 holiday season.

Prior to the filing, Debtors lost vendor confidence due to Debtors' failure to pay for merchandise, and vendors had stopped shipments to Debtors. The Debtors are working diligently to repair the relationship with their vendors. Assuming they are able to rebuild that relationship, the Debtors anticipate that they need to begin ordering merchandise in May 2005 in order to build store inventory in time for the Christmas holiday season. Most of the Debtors' inventory is specialized and has to be manufactured to order, rather than simply drawn from existing inventory of jewelry manufacturers and wholesalers. This process takes a matter of several weeks to perhaps months, and unless orders begin as early as May, so that the manufacturing of that product can occur in June and July, deliveries needed in September and October will not be timely. These early Fall deliveries are essential to having a fully stocked network of stores ready for the holiday season.

The Debtors believe, and the Committee agrees, that ensuring the Debtors' right to exclusivity in the proposal of a plan of reorganization is a critical and necessary element of rebuilding the relationship with vendors that would be necessary for the vendors to agree to manufacture and ship goods on credit. A shorter extension would leave uncertainty in the minds of vendors as to whether it is an appropriate business risk to become financially committed to the Debtors.

The Court, at the request of the Debtors, by separate order, will establish the bar date for the filing of claims on June 30 and July 13, 2005, at which time the claims review process will begin. The Debtors and the Committee believe that it would be impossible to review claims in the short period between the bar date and the expiration of the Debtors' exclusivity period as proposed by R & Y. The Debtors continue to deal with governmental investigations from twenty or more states and federal law enforcement and regulatory agencies as well. Those investigations could result in the levying of fines, penalties or the assertion of claims against the Debtors' estates. Also, the Debtors have undertaken, but cannot complete until late Summer or early Fall, an analysis of which leases to assume and which ones to reject, and have not made a final determination whether any of the stores that are currently slated to continue in operation will, in fact, prove profitable so as to ultimately be part of the Debtors' restructured core. Debtors cannot complete the lease assumption/rejection analysis nor make a final determination as to what stores to retain on a long term basis in the period proposed by R & Y. Finally, Debtors will not have had the benefit of any profitable months of operation by mid-Summer 2005.

Having heard the testimony and reviewed the documentary evidence, I agree with the Debtors and the Creditors' Committee on each point.

### CONCLUSIONS OF LAW

#### Objection of R & Y

■ The Court may extend a debtor's exclusivity period pursuant to 11 U.S.C. § 1121(d) which provides:

On request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120–day period or the 180 day period referred to in this section.

Debtors bear the burden of proving that cause exists to extend the period for filing a plan of reorganization and for obtaining

acceptances. *In re Curry Corp.*, 148 B.R. 754, 755 (Bankr.S.D.N.Y.1992).

■ Although "cause" is not defined in the Code, courts have developed and adopted the following non-exclusive list of factors to determine whether cause exists to extend the exclusivity period:

1) the size and complexity of the case;
2) the necessity of sufficient time to negotiate and prepare adequate information;
3) the existence of good faith progress toward reorganization;
4) whether the debtor is paying its debts as they come due;
5) whether the debtor has demonstrated reasonable prospects for filing a viable plan;
6) whether the debtor has made progress negotiating with creditors;
7) the length of time the case has been pending;
8) whether the debtor is seeking an extension to pressure creditors; and
9) whether unresolved contingencies exist.

*See In re Service Merch. Co.*, 256 B.R. 744, 751 (Bankr.M.D.Tenn.2000); *In re Express One Intern., Inc.*, 194 B.R. 98, 100 (Bankr. E.D.Tex.1996); *See also In re McLean Indus. Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y.1987).

■ After examining the evidence presented to the Court at the March 31 hearing, I find that cause exists to extend the exclusivity period in Debtors' case to February 28, 2006, and May 30, 2006, as requested. First, this case is very large and complex. At the time of filing, Debtors employed over 4,500 employees in approximately 650 stores located in 22 states. Debtors listed approximately $415 million in assets and approximately $234 million in liabilities. In the fiscal year ending September 30, 2004, Debtors generated sales of more than $469 million. At the time of filing, Debtors were in desperate need for a multimillion dollar credit facility. The complexity of the case is magnified by the pending investigations by the Department of Justice and the Securities and Exchange Commission as well as the pending litigation against the Debtors. The large size of the debtors and the complexity of the case including the unresolved investigations and litigation weigh in favor of and are the traditional grounds for extending exclusivity. *In re Express One Intern., Inc.*, 194 B.R. at 100.

In addition, Debtors have not had sufficient time to negotiate a plan. The case has been pending for only three months. Debtors unexpectedly filed for bankruptcy on January, 14, 2005 with no strategic plan in place for filing and restructuring. Debtors completed their 2005 Business Plan only weeks ago. Debtors will not complete their Store Closing Sales until June or July, and the general Claims Bar Date is set for June 30, 2005. At a minimum, Debtors will need time to evaluate the Store Closing Sales and the performance of the Go Forward Stores, analyze the claims filed, and establish exit financing or new equity before they will be in a position to negotiate a plan. All of this cannot be accomplished in the limited period suggested by the objecting parties.

Although the case has only been pending for three months, the Debtors have made good faith progress toward reorganization, working to resolve issues with vendors, landlords and other creditors. Immediately upon filing, Debtors began work on obtaining Debtor–in–Possession financing in order to alleviate financing problems with vendors. On February 18, 2005, the Court entered a final order authorizing the Debtors to enter into a post-petition financing facility. Further, Debtors implemented the Store Closing Sales program,

and they negotiated with the landlords an extension of the time to assume or reject leases.

Debtors are paying their bills as they become due. The post-petition credit facility should enable Debtors to continue to pay their bills as they become due. Moreover, Debtors have made progress negotiating with their creditors and are not seeking an extension of exclusivity in order to pressure the creditors to submit to their demands. Debtors successfully negotiated with the landlords aspects of the Store Closing Sales as well as an extension of the time to assume or reject leases. Importantly, the vendors have resumed shipment of merchandise, and Ronald Tucker, co-chair of the Creditors' Committee, testified that the Committee supported the request for the extension of exclusivity because it was in the best interest of the Debtors and will help restore vendor support for the Debtors.

Finally, the Court finds that the length of the extension is not excessive due to the nature of Debtors' business. It is without dispute that Debtors' business is highly seasonal and the 2005 holiday season is critical to Debtors' successful emergence from Chapter 11. It generates 45% of annual revenue during this season. That alone is not sufficient to grant an extension of the length sought here. Indeed any retail business can likely show a heavy seasonal influence on revenues. Here, however, Debtors have the ordinary cyclical deviations in revenue, coupled with a far-flung multi-state, multi-store business, with a troubled past, new management and specialized inventory needs. Those needs can only be met if this extension is granted.

Vendors need the exclusivity period extended to provide them confidence that the Debtors will remain operating and able to pay. Twice in the past the vendors have gone unpaid, and the new management has worked diligently to restore their confidence and valuable relationships. This extension is a central element in that process.

If Debtors' exclusivity ends in July, preparation for the holiday shopping season will be negatively impacted. Although the extension seems long, it is not unprecedented for a business that is so dependent on the holiday shopping season. *See In re Service Merch. Co.,* 256 B.R. at 752. The extension through February 28, 2006, will allow Debtors a reasonable time to evaluate their performance following the December holidays.

■ In addition to considering whether an extension of exclusivity will facilitate moving the case forward, *see In re Dow Corning Corp.,* 208 B.R. 661, 670 (Bankr. E.D.Mich.1997), the Court must also balance the harm the extension will cause to creditors. *Official Comm. of Unsecured Creditors v. Mirant Corp. (In re Mirant Corp.),* Nos. 4–04–CV–476–A, 4–04–CV–530–A, 2004 WL 2250986, at * 2 (N.D.Tex. Sept. 30, 2004). The Fifth Circuit wrote, "Section 1121 was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors." *United Sav. Ass'n v. Timbers of Inwood Forest Associates, Ltd. (In re Timbers of Inwood Forest Associates, Ltd.),* 808 F.2d 363, 372 (5th Cir. 1987)(en banc). Since the Creditor's Committee supports the extension of exclusivity, and in fact, the vendors are relying on the extension to solidify their confidence, the Court finds that the extension will not harm the creditors nor hold them hostage in the bankruptcy process.

R & Y asserted that it has no objection to the Debtors reserving the right to seek a further extension in July. As a general proposition, I agree that it is often desir-

able for extensions of the exclusivity period to be granted for more limited periods of time to ensure continuing oversight and review by the Court. However, based on the record in this case, it is self evident that no useful purpose would be gained by setting such an early termination of exclusivity even if it is believed to be an interim deadline from the inception. The Court can conceive of no way, given the factors previously outlined, that the Debtors could draft an acceptable disclosure statement or craft a meaningful plan on which creditors or the Court could make a determination of feasibility. Only if the Debtors are granted the additional time to complete their claim review process, make crucial decisions concerning leases and retention of stores, deal with governmental investigations, rebuild its vendor relationships, seek the infusion of new capital, and produce a twelve month operating history under Chapter 11 protection is it conceivable that the Debtor could in good faith propose a plan.

On such a record it would be an exercise in futility and would impose unwarranted and unnecessary expenses upon the estate and all the participating creditors in these proceedings to limit the extension of exclusivity in the manner suggested by R & Y. For that reason the R & Y objections are overruled and the Court will by separate order enter the proposed exclusivity order submitted by the Debtors.

**Objection of United States Trustee**

The United States Trustee has been requested to appoint an equity security holders' committee and is in the process of determining whether to grant that request. Because that committee may be appointed in the future, the Trustee seeks to limit the exclusivity order in such a way that the equity security holders' committee could, if appointed hereafter, come before the Court and seek to shorten the exclusiv-ity periods which the Debtors have sought and which I have concluded should be granted.

Understanding the United States Trustee's concern and having considered the argument of counsel for United States Trustee and Debtors, I agree with the Debtors that the relief the Debtors are seeking by this Motion was duly noticed and set for a hearing, that a deadline for objections was established by this Court's Case Management Order, and after a hearing that consumed several hours, the Court entertained all evidence and all argument which any party desired to place before it. This included objections by shareholders R & Y, and the opportunity was available for any other shareholder to present arguments. That being the case, because the issues have been fully aired and because the Debtors have made a compelling case for the relief sought, I find that it would interject the very uncertainty back into the process, which Debtors have convinced me should be avoided, to agree to the limitations which the United States Trustee has sought and I therefore overrule that objection.

### ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that Debtors' Motion to Extend Debtors' Exclusive Periods Within which to File and Solicit Acceptances of a Plan of Reorganization is GRANTED, and a separate order will be entered in accordance with this opinion.